# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RONALD G. ALLEN, et al., | : | |
| Plaintiffs, | : | Case No. 3:07cv00361 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| INTERNATIONAL TRUCK AND ENGINE CORPORATION, et al. | : | |
| | : | |
| Defendants. | | |
| | : | |

## REPORT AND RECOMMENDATIONS [1]

## I. INTRODUCTION

Plaintiff Ronald G. Allen is employed by Defendant International Truck and Engine Corporation (Defendant International) in Melrose Park, Illinois. Plaintiff once worked for Defendant International at its Springfield, Ohio location where he was "affected by a plant closing and forced to commute to Chicago, Illinois to remain employed with Defendant International...." (Doc. #1 at ¶20). He currently remains employed by Defendant International at its Melrose Park location.

Plaintiff brings this case on behalf of himself and all other persons similarly situated claiming that Defendant International has breached their rights set forth in a Collective Bargaining Agreement in violation of Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §158.[2] Plaintiff also raises two claims under Ohio law against

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Since Plaintiff's Motion to Certify Class (Doc. #12) is pending, this Report primarily refers to Plaintiff alone with the knowledge that his Complaint seeks to raise claims on behalf of similarly situated

Defendant International: conspiracy to violate his contractual rights and breach of contract.

The case is presently before the Court upon Defendant International's Motion to Dismiss and Supplemental Memorandum in Support (Doc. #s 13, 14), Plaintiff's Memorandum Contra (Doc. #16), Defendant International's Reply (Doc. # 17), and the record as a whole.[3]

## II. FACTUAL BACKGROUND

Accepting as true the factual allegations in Plaintiff's Complaint and liberally construing those allegations in his favor, *see infra*, §III, reveals the following.

Defendant International is a transportation company that builds trucks, engines, and buses. In 1997 Defendant International hired Plaintiff to work at its plant in Springfield, Ohio. Plaintiff, as noted above, was transferred to Defendant International's plant in Melrose, Illinois, where he remains an "active employee with Defendant International...." (Doc. #1 at ¶14).

Plaintiff is a member of UAW International Union and several of its local chapters including locals chapters in Melrose, Illinois and Springfield, Ohio. The terms of his employment with Defendant International are covered by the terms of a Collective Bargaining Agreement, which mainly consists of the 2002 Production and Maintenance Main Labor Contract (Main Labor Contract). (Doc. #1 at ¶18 and Exhibit 1). Plaintiff has attached to the Complaint part of the Main Labor Contract. *Id*. Through his prayer for relief in the Complaint, Plaintiff seeks in part:

> An order of the Court requiring that each Plaintiff be granted their recall and/or seniority in accordance with the Main Labor Contract and the Master Recall Supplemental Documents....

(Doc. #1, p. 14, ¶5). Plaintiff did not attach to the Complaint the Master Recall Supplemental Documents.

Plaintiff alleges that he "has never broken service, under the terms of Collective Bargaining Agreement, [but] has had his seniority rights reduced by seven (7) years. Further, the Defendants have disregarded his recall rights, which are provided for in the Master Recall List in

---

persons.

[3] The remaining Defendants – UAW International Union and several local UAW chapters – have filed an Answer but have not otherwise challenged Plaintiff's Complaint.

2

conjunction with the ... Main Labor Contract...." (Doc. #1 at ¶14).

Plaintiff further alleges that on June 14, 2006, after he began working at Melrose Park, Defendant UAW Local 402 issued a Bulletin explaining, "'The company sent out approximately 67 call back letters on June 13, 2006. Employees who still have recall rights should be receiving this letter.'" (Doc. #1, ¶26 (quoting Exh. 2)). Plaintiff characterizes himself, and similarly situated employees, as "active Master Recall List employees" who did not receive a call back letter from Defendant International and who were not recalled to work at the Springfield, Ohio plant. (Doc. #1, ¶27).

Plaintiff states that layoff and recall procedures are determined by the Main Labor Contract. Plaintiff asserts, "A recall from Layoff at Defendant International Truck and Engine Corporation is by seniority, with the Local 6, 98 and/or 402 member with the highest seniority on layoff being returned to work first. All Plaintiffs have layoff and recall rights under the Main Labor Contract over new hires and temporary employees." *Id*. at ¶3031

In Counts I and VI of his Complaint, Plaintiff claims that Defendant International failed to recall him to work at its Springfield, Ohio location, even though he was on the Master Recall List, thus stripping him of his seniority and refusing to honor his recall rights under the Collective Bargaining Agreement.

In Count III of his Complaint, Plaintiff claims alleges that Defendant International and the Union Defendants engaged in a conspiracy to deny his seniority and recall rights under the Collective Bargaining Agreement.

## III. MOTION TO DISMISS

Defendant International contends that Plaintiff's claims against it – Counts I, III, and VI of the Complaint – must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Golden v. City of Columbus,* 404 F.3d 950, 958-59 (6th Cir. 2005)). When evaluating a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's factual allegations as true and construes them in the plaintiff's favor.

*Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007); *see Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). Dismissal for failure to state a claim is warranted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111, 1116 (6th Cir. 2008); *see Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003).

"The factual allegations in a complaint need not be detailed: they 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008)(quoting *Erickson v. Pardus,* ___ U.S. ___, 127 S.Ct. 2197, 2199 (2007)); *see Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 and n.1 (6th Cir. 2008).

## IV. DISCUSSION

### A. To Convert or Not to Convert

Plaintiff contends that Defendant International's Rule 12(b)(6) Motion to Dismiss must be converted to a Motion for Summary Judgment under Fed. R. Civ. P. 56. Plaintiff points out that Defendant International relies on hundreds of pages of materials that are outside of the pleadings, and as a result, Plaintiff has submitted extra-pleading materials in support of his Memorandum Contra, including his Declaration under penalty of perjury. (Doc. #16, Attachment 4). Consideration of those materials, according to Plaintiff, requires the Court to convert Defendant International's Motion to a Motion for Summary Judgment.

If the Court considers documents submitted outside the Complaint when ruling on a Motion under Rule 12, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 26." Fed. R. Civ. P. 12. "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings.... This occurs when 'a document is referred to in the Complaint and is central to the plaintiff's claim.' In such event, 'the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the

4

court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Greenberg v. Life Insurance Company of Va*., 177 F.3d 507, 514 (6th Cir. 1999) (quoting in part 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998)); *see Weiner, D.P.M. v. Klais and Company, Inc*., 108 F.3d 86, 89 (6th Cir. 1997).

Converting Defendant International's Motion to Dismiss to a Motion for Summary Judgment is unwarranted. Plaintiff has attached part of the Main Labor Contract to his Complaint. The Complaint refers frequently to the Main Labor Contract and seeks to enforce Plaintiff's rights under the Main Labor Contract. Consequently, the Main Labor Contract is central to Plaintiff's claims and is not, therefore, deemed to involve a matter or document outside the pleading. *See Greenberg*, 177 F.3d at 514. Consequently, the Court's consideration of those portions of the entire Main Labor Contract submitted by Defendant International does not require conversion of its Motion to Dismiss into a Motion for Summary Judgment. *See id*.; *see also Weiner, D.P.M.*, 108 F.3d at 89.

As to the Supplemental Documents – especially the Supplemental Document dated October 1, 2002, addressing eligibility for placement on the Master Recall List, *see* Doc. #14, Exh. A-9 – Plaintiff did not attach a copy of any Supplemental Document to the Complaint. The issue, then, is whether the Court can consider the Supplement Documents, especially the October 1, 2002 Supplemental Document, without first converting Defendant International's Motion to a Motion for Summary Judgment. A review of the Complaint and the Main Labor Contract reveals that conversion is unwarranted. The Complaint seeks to enforce Plaintiff's recall rights under both the Main Labor Contract and "the Master Recall Supplemental Documents...." (Doc. #1 at p.14, ¶5). The Complaint also seeks a finding that Defendant International has "violated the terms of the Main Labor Contract, including *inter alia*, the Master Recall Supplemental Documents...." *Id*. at ¶4. And Plaintiff alleges in the Complaint, "Further, the Defendants have disregarded his recall rights, which are provided for in the Master Recall List in conjunction with the ... Main Labor Contract." (Doc. #1 at ¶14).

Although the CBA is embodied in large part in the Main Labor Contract, the terms governing layoff and recall refer to and incorporate layoff and recall provisions set forth in the Supplemental Documents. *See* Doc. #1 at 14, ¶4. For example, Article XVI, Section 9 of the

Main Labor Contract provides:

> Layoff, recall, promotion and transfer procedures, including assignments to shift, and the seniority of an employee who accepts a transfer from the bargaining unit, as established by understandings reached between the Company and each Local Union during the negotiation of this Contract, are set forth in agreements which are supplemental to this Contract and are made a part hereof by this reference....

(Doc. #14, Exh. 1, ¶702). The Supplemental Document dated October 1, 2002 addresses the Master Recall List and describes the "layoff, recall, promotion and transfer procedures" referenced in the just-quoted paragraph from Article XVI, Section 9 of Main Labor Contract. Since Plaintiff's right to recall derives from the terms set forth in the October 1, 2002 Supplemental Document, it is central to Plaintiff's claim that Defendant International breached his right to recall to the Springfield facility in violation of the LMRA and Ohio law. As a result, it is properly considered a matter within the Complaint. *See Greenberg*, 177 F.3d at 514; *see also Weiner, D.P.M.*, 108 F.3d at 89.

Lastly, the Court's consideration of the Master Labor Contract along with the Supplementals Documents, including the October 1, 2002 Supplemental Document, creates no danger of surprise or prejudice to Plaintiff, because the Complaint seeks to enforce rights purportedly established by the Master Labor Contract and the Supplemental Documents.

For all the above reasons, conversion of Defendant International's Motion to Dismiss to a Motion for Summary Judgment is unwarranted.

### B. Failure to State a Claim

#### 1.

Defendant International contends that Plaintiff's claims of breach of contract, Counts I and VI of the Complaint, fail to state a claim upon which relief can be granted. Relying on the October 1, 2002 Supplemental Document, Defendant International argues that its clear and unambiguous language "provides that employees on the Master Recall List as a result of a full or partial plant closing – which is exactly what Plaintiff alleges to be [in] his circumstances – forfeit their seniority and recall rights at their original facility upon accepting a position in another facility." (Doc. #14 at 9). Defendant International finds support for its reasoning in

paragraph B(3) of the October 1, 2002 Supplemental Document, which provides:

> B. Placement of employees from the Master Recall List will be accomplished in the following manner:
>
> * * *
>
> 3. Once an employee on the Master Recall List, as a result of a Plant or Partial Plant closing, has been placed at a Company operation on an open job, the employee will carry his/her Company service and previous bargaining unit seniority to the new bargaining unit. The employee's recall and seniority rights at the home operation will be terminated.

(Doc. #14, Supplemental Documents to the 2002 Main Labor Contract at p. 51).

Plaintiff contends that he is eligible for inclusion on the Master Recall List under paragraph A(1)(a) of the October 1, 2002 Supplemental Document which provides, in part, that the following employees are eligible for inclusion on the Master Recall List:

> Employees with two (2) or more years of Company service who have been on layoff in excess of six (6) months from a bargaining unit covered by the respective Main Labor Contract.

(Doc. #14, Supplemental Documents at p. 50). With Plaintiff's right to inclusion on the Master Recall List thus established by paragraph A(1)(a), Plaintiff maintains that his right to recall exists under paragraph B 4, which states:

> B. Placement of employees from the Master Recall List will be accomplished in the following manner:
>
> * * *
>
> 4. Once an employee on the Master Recall List, as a result of being eligible by the terms of A 1 a) above has been placed at a Company operation on an open job, the employee ... will retain his recall rights to his/her prior bargaining unit.

*Id.* at p. 51.

**2.**

"The enforcement and interpretation of collective bargaining agreements under §301 [of

7

the LMRA] is governed by substantive federal law. However, traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies." *Maurer v. Joy Technologies, Inc.*, 212 F.3d 907, 915 (6th Cir. 2000).

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance.... Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.

*Maurer*, 212 F.3d at 915; *see Yolton v. El Paso Tennessee Pipeline* Co., 435 F.3d 571, 578-79 (6th Cir. 2006); *see also Roeder v. American Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999) ("To determine if the CBA was breached, we look to the plain meaning of the agreement."); *Patton v. Budd Co*., 229 Fed.Appx. 380, 385 (6th Cir. 2007).

In the present case, the CBA contains clear and unambiguous terms regarding the employee recall rights that are in dispute. Article XVI, Section 2 of the Main Labor Contract provides that employees' seniority shall be used to determine the order of layoff and recall from layoff. Article XVI, Section 9 provides that the applicable "[l]ayoff, recall, promotion and transfer procedures…are set forth in agreements which are supplemental to [the Main Labor Contract] and are made a part hereof by this reference." (Doc. #14, Exh. A-1, ¶702). Defendant International is correct that those Supplemental Documents include the October 1, 2002 Document addressing eligibility for the Master Recall List. (Doc. #14, Exh. A-9 at p.50). Paragraph B(3) of that document provides in unambiguous language that if an employee: (1) is laid off as a result of a full or partial plant closing and is placed on the Master Recall List and (2)

accepts a position at a new facility rather than awaiting recall to his original facility, then his "recall and seniority rights at the home operation will be terminated." *Id.* at p. 51.

In his Complaint, Plaintiff alleges that he lost his position at the Springfield facility as a result of a "plant closing." (Doc. #1, ¶ 20; *see also* ¶25). The Complaint further asserts that Plaintiff should have been returned to work at the Springfield, Ohio facility when employees were recalled on or about June 14, 2006, *id.* at ¶¶ 26, 27, and that Defendant International breached the Collective Bargaining Agreement by stripping him of his seniority and refusing to honor his recall rights at its Springfield, Ohio location. *Id.* ¶¶ 38-40. Yet, Plaintiff essentially acknowledges in his Complaint that he was on the Master Recall List and that sometime before the June 14, 2006 recall at Springfield he accepted a position at the Melrose Park facility. *See id.* Based on the plain meaning and express terms of the October 1, 2002 Supplemental Document addressing eligibility for recall, once Plaintiff accepted a position at another facility, he no longer held any contractual right to be recalled to the Springfield plant. *See* Doc. #14, Exh. A-9 at ¶B(3). Because the Collective Bargaining Agreement's provisions regarding the seniority and recall rights of employees on the Master Recall List – set forth in the October 1, 2002 Supplemental Document – is clear and unambiguous, the ordinary and natural meaning of its language, in light of the allegations set forth in the Complaint, results in the conclusion that Defendant International did not breach the terms of the parties' Collective Bargaining Agreement.

Plaintiff's reliance on Paragraph A(1)(a) of the October 1, 2002 Supplemental Document is misplaced. This Supplement Document states, "A Master Recall List will be developed to expand employment opportunities for long-service employees....." in two situations: employees on layoff and employees affected by a plant closing (or partial plant closing). (Doc. #14, Exh. A-9 at p.50). Defendant International is correct that according to the allegations set forth in the Complaint, Plaintiff was in the situation of an employee affected by a plant closing. He is thus bound by the terms of ¶3(B), which, as discussed above, resulted in the termination of his recall rights to the Springfield, Ohio facility. Although Plaintiff also alleges in his Complaint that he was subject to two periods of layoff lasting a total of approximately six months, *see* Doc. #1 at ¶25, nothing in the Complaint indicates that these periods of layoffs occurred before he accepted the position at the Melrose, Illinois facility, thus terminating his recall rights to Springfield,

9

Ohio. Instead, although the Complaint does not specify when the Springfield plant closed, the Complaint indicates that the UAW issued a bulletin on June 14, 2006 stating that Defendant International had sent 67 call back letters to employees who still have recall rights. (Doc. #1 at ¶26). According to the Complaint, at that time – mid-June 2006 – Plaintiff and other similarly situated active Master Recall List employees were working in "Chicago, Illinois" (presumably referring to the Melrose, Illinois facility). *Id*. at ¶27. Thus, under Plaintiff's well-pled allegations, the timing of this mid-June 2006 recall notice occurred well before the second layoff period – which did not occur until January 3, 2007 to May 21, 2007, *see id*. at ¶25. As a result, at the time Plaintiff first accepted the transfer to the Melrose facility due the Springfield plant closing, he had not been subject to six-month layoff, and he did not find himself in the situation covered by Paragraph A(1)(a) of the Supplemental Document. (Doc. #14, Exh. A-9 at p.50).

Plaintiff also argues in his Memorandum Contra, in a manner directly contrary to what he alleged in his Complaint, that the paragraph B(3) of the October 1, 2002 Supplemental Document does not apply to him because the Springfield plant did not experience a "plant closing" as that term is defined by the Agreement. (Doc. #16 at p.5). In support of that assertion, Plaintiff cites another Supplemental Document entitled "Job Security," which provides that during the term of the Agreement, "the Company will not close ... any plant ... constituting a bargaining unit under the Agreement," and further provides that "[n]othing in this or any other provision of [the Agreement] is intended to limit or prohibit implementation of the Company's previously announced plans to cease operations at the Springfield Body Plant." (Doc. #14, Exh. A-9, at p.7) (emphasis supplied). Plaintiff argues that through this language, the closing of the Springfield plant failed to meet the definition of a "plant closing," and that as such, he was not an employee affected by a plant closing, thus rendering inapplicable Paragraph B(3) of the October 1, 2002 Supplemental Document.

Plaintiff's contention lacks merit because it is directly contrary to the allegations in his Complaint, where he specifically alleged that the Springfield plant experienced a "plant closing." (Doc. #1 at ¶20). Furthermore, the plain language of the Supplemental Document regarding Job Security does not support Plaintiff's reading of that document. Indeed, the document merely provides that the Company agreed not to close any plants during the term of the Agreement <u>other than</u> the Springfield plant, the closure of which had already been announced at the time the

Agreement was entered into. (Doc. #14, Exh. A-9 at p.7). In other words, when the Collective Bargaining Agreement became effective, no job security was being guaranteed at the Springfield plant because Defendant International had already announced the pending closure of that plant. *See id.*

Accordingly, for all the above reasons, Paragraph (B)(3) of the October 1, 2002 Supplemental Documents applies to Plaintiff, and his breach of contract claims must therefore be dismissed.

### C.     Preemption

Defendant International contends that Plaintiff's state-law claims of conspiracy and breach of contract – Counts III and VI – must be dismissed as preempted by §301 of the LMRA. Plaintiff's Memorandum Contra does not address preemption, although he asserts a "SECOND INDEPENDENT BASIS FOR THE BREACH OF CONTRACT CLAIM...," maintaining that Defendant International "breached the Agreement by failing to honor his legitimate transfer requests." (Doc. #16 at 7). The particulars of this claim are found in Plaintiff's Declaration and transfer request forms he has attached to his Memorandum. *Id.* at Exh. A and Attachment 4. Although such additional claims must normally be submitted through an Amended Complaint, Plaintiff need not amend his Complaint because, as will be discussed momentarily, Plaintiff's second independent claim is preempted by the LMRA, leaving his proposed amendment futile. *See Slusher v. Carson*, 540 F.3d 449, 457-58 (6th Cir. 2008); *see also Zirnhelt v. Michigan Consol. Gas Co.*, 526 F.3d 282, 288 (6th Cir. 2008); *Heard v. SBC Ameritech Corp.*, 205 Fed.Appx. 355, 358 (6th Cir. 2006).

The United States Court of Appeals for the Sixth Circuit has established a two-step analysis for determining whether §301 of the LMRA preempts a state law cause of action:

> 'First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms.' *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994). The question informing the first step's analysis is whether the plaintiff can prove all the elements of her claim without contract interpretation. *Id.* Looking to the essence of a plaintiff's claim, a court must 'determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort.' *Id.* The second step requires a court to 'ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.' *Id.*

*Brittingham v. General Motors Corp.*, 526 F.3d 272, 278 (6th Cir. 2008).

Ohio law defines a civil conspiracy claim as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Blessing v. United Steel, Paper and Forestry ... Workers Union*, 244 Fed.Appx. 614, 622 (6th Cir. 2007)(citing in part *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d 849, 861 (N.D. Ohio 2003)). "A conspiracy alone cannot be made the subject of an civil action, however, unless there is an underlying unlawful act." *Blessing*, 244 Fed.Appx. at 622-23.

Plaintiff's conspiracy claim is based on the allegation that Defendant International and the remaining Defendants conspired to deny his rights under the Collective Bargaining Agreement. Specifically, Plaintiff alleges (on information and belief) that Defendants have given unauthorized preferences to relative or friends of the Union Defendants and that Defendants' "refusal to honor and/or protect Plaintiffs' recall rights and/or their seniority rights is a violation of the Production and Maintenance Main Labor Contract." (Doc. #1 at ¶53). In this manner, according to Plaintiff, Defendants have engaged in a conspiracy in violation of §301 of the LMRA and in breach of the Collective Bargaining Agreement. *Id*. at ¶¶ 57-58. Plaintiff's conspiracy claim under Ohio law is based on his rights to recall and seniority rights under the Collective Bargaining Agreement. The claim therefore must entail interpretation of the Collective Bargaining Agreement to ascertain what right to recall and seniority Plaintiff has under that Agreement. Because of this, the LMRA preempts Plaintiff's conspiracy claim against Defendant International. *See Blessing*, 244 Fed.Appx. at 622-23.

Plaintiff's breach of contract claim is also preempted by §301 of the LMRA. The Complaint claims that Defendant International breached his rights regarding seniority set forth in the provisions of the Collective Bargaining Agreement. (Doc. #1 at ¶71). To determine whether this breach occurred as set forth in the Complaint and as asserted as an independent claim as set forth in Plaintiff's Memorandum Contra, the Court would be first required to interpret the Collective Bargaining Agreement to determine what seniority rights it provides to Plaintiff. As a result, these claim derive from, and are inextricably intertwined with, the terms of the Collective Bargaining Agreement and thus preempted by §301 of the LMRA. *Cf. Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 607 (6th Cir. 1999)("'any state law cause of action for violation of

collective-bargaining agreements is entirely displaced by federal law under §301.'")(quoting parenthetically *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368 (1990)(other citation omitted)).

Accordingly, the LMRA preempts Plaintiff's state-law claims in Counts III and VI of the Complaint, and the LMRA also preempts his proposed second independent breach of contract claim asserted in his Memorandum Contra.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant International's Motion to Dismiss and Supplemental Memorandum in Support (Doc. #s 13) be GRANTED; and

2. Plaintiff's claims against Defendant International be DISMISSED.


December 30, 2008

                                                                 s/Sharon L. Ovington
                                                                   Sharon L. Ovington
                                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).