# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RONALD G. ALLEN, *et al.*, | : | |
| Plaintiffs, | : | Case No. 3:07cv00361 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| INTERNATIONAL TRUCK AND<br>ENGINE CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | | |
| | : | |

## SECOND REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Ronald G. Allen brings this putative class action against his employer Defendant International Truck and Engine Corporation and several Union Defendants. Plaintiff challenges Defendant International's determination that he is not eligible for transfer or recall to its plant in Springfield, Ohio under the terms of an applicable Collective Bargaining Agreement. Plaintiff is currently employed at Defendant International's facility in Melrose Park, Illinois but lives much closer to Springfield, Ohio. Not surprisingly, he would prefer to work at Defendant International's plant in Springfield, Ohio rather than commuting to Melrose Park, Illinois.

On March 31, 2009, the Court adopted the first Report and Recommendations filed in this case, thereby sustaining Defendant International's Motion to Dismiss. (Doc. #24). The Court also granted Plaintiff leave to final an Amended Complaint as to Count I of the

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Complaint "setting forth his newly added factual theory." (Doc. #24 at 4). Plaintiff has since filed an Amended Complaint with attached Exhibits. (Doc. #26).

The case is presently pending upon Plaintiff's Amended Complaint and attached Exhibits (Doc. #26), Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), UAW Local 402, UAW Local 98, and UAW Local 6's Motion to Dismiss (Doc. #27), Defendant International's Motion to Dismiss Count I of Plaintiff's First Amended Complaint and Memorandum of Law in Support (Doc. #28, 29), Plaintiff's Memoranda in Opposition (Doc. #s 32, 33), each Defendant's respective Reply (Doc. #s 34, 35), and the record as a whole.

## II.  PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint asserts the following: Plaintiff and other employees of Defendant International and other members of the Defendant Unions have layoff and recall rights controlled by seniority pursuant to the Main Labor Contract. Under the Main Labor Contract, Members of UAW locals 6, 98, and 402 with the lowest seniority are laid off first; employees of Defendant International with the highest seniority are recalled from layoff and returned to work first, before new hires or temporary employees. (Doc. #26, ¶s 33, 34). "Any change in the seniority rights of member[s] of Local 6, 98, and/or 402 must be in accordance with the Main Labor Contract." (Doc. #26, ¶34).

On September 2, 1997, Defendant International hired Plaintiff to work at its Springfield, Ohio plant.

"As of March 30, 2001, [Plaintiff] was laid off from the Springfield, Ohio plant, after having put in three years, six months and twenty-eight days of service. That lay-off lasted until September 7, 2004." (Doc. #26, ¶25).

Defendant International has acknowledged that the Springfield Plant was closed as of October 1, 2002. (Doc. #26, ¶26).

Defendant International and the Defendant Unions did not automatically place

2

Plaintiff and over 700 others on the Master Recall list. "If the Company had done so, then [Plaintiff] and others would have retained their seniority rights under the Master Recall document." *Id*. at ¶27 (citation omitted).

On September 1, 2004 – while he was still on layoff from the Springfield, Ohio plant – Plaintiff applied to Defendant International to be placed on the Master Recall List. "Under the terms of the Master Recall document, [Plaintiff] was eligible for the Master Recall List by virtue of having been laid off for more than six months. This eligibility is under A.1.(a) of the Master Recall document." (Doc. #26, ¶28).

On September 7, 2004, Plaintiff and others were recalled – not to the Springfield, Ohio plant – but to Defendant International's plant in Melrose, Illinois "under the terms of the Master Recall document." (Doc. #26, ¶29). Plaintiff "was given Day One Seniority, i.e., stripped of seven years of prior service under the B.4 provision of the Master Recall document. Under B.4 of the Master Recall document, [Plaintiff] and others should have then retained their recall rights to their prior unit. The Defendant Company has not honored this...." (Doc. #26, ¶29)(citation omitted). According to Plaintiff, Defendant International's decision to strip him of his seniority and recall rights violated the terms of the applicable Collective Bargaining Agreement.

On November 7, 2005, Plaintiff was laid off from work at the Melrose Park Facility. This layoff lasted about six week, until December 19, 2005. (Doc. #26, ¶31).

On or about June 14, 2006, Defendant UAW Local 402 issued a bulletin indicating, "The Company sent out approximately 67 call back letters on June 13, 2006. Employees who still have recall rights should be receiving a letter." (Doc. #26, ¶32)(citation omitted). Plaintiff and the other "similarly situated active Master Recall List employees did not receive such a recall letter." (Doc. #26, ¶33). As a result, he was not recalled to work at Defendant International's plant in Springfield, Ohio.

On January 3, 2007 Plaintiff was again laid off from work at the Melrose Park facility. This layoff lasted more than five months, until May 21, 2007. (Doc. #26, ¶31).

The Amended Complaint identifies three Counts:

Count I: Breach of Contract. Defendant International breached the Main Labor Contract and its Supplemental Documents by failing to honor Plaintiff's seniority rights.

Count II: Breach of the Duty of Fair Representation by UAW International Union and by UAW Locals 6, 98, and 402. These Defendants agreed with Defendant International to strip the Plaintiff's seniority and recall rights. The Union Defendants have also breached the duty of fair representation they owe Plaintiff under §301 of the LMRA by refusing to honor or enforce Plaintiff's recall and seniority rights.

Count III: "The Futility of Plaintiffs' Exhausting The UAW's Internal Appeal Process." (Doc. #26, p. 11).

As he did in his original Complaint, Plaintiff again seeks in part:

An order of the Court requiring the each Plaintiff be granted their recall rights and/or their seniority in accordance with the Main Labor Contract and that Master Recall Supplemental Documents....

(Doc. #26 at p. 13).


## III. CONTRACT LANGUAGE AT ISSUE

The applicable Collective Bargaining Agreement consists in large part of a Main Labor Contract. (Doc. #26, Exhibits 3-10).[2] Article XVI of the Main Labor Contract, titled "SENIORITY," sets forth the parties' agreements regarding the layoff and recall of employees. (Doc. #26, Exh. 7, ¶s 638, *et seq*.). Seniority is generally determined by the employee's length of service with Defendant International. *Id*. at ¶ 638. Length of service begins for purposes of determining seniority begins on the date an employee begins working in the bargaining unit. *Id*. at ¶658.

The period constituting an employee's seniority can be "broken" as a result of

---

[2] The Exhibit numbers of the documents attached to Plaintiff's Amended Complaint correspond to the Attachment numbers assigned by the Court's CMECF system.

4

various events, including by a layoff lasting in excess of either three years "or a period equal to the seniority he had acquired at the time of such termination, whichever is greater, has elapsed since he last worked for the Company...." *Id*. at ¶s 658, 667.

Provisions concerning layoff and recall also appear in the Supplement Documents to the Main Labor Contract. *E.g,* Doc. #26, Exhs. 11, 12. The Supplemental Document (a letter) dated October 1, 2002 addresses how employees qualify for inclusion on, or exclusion, from the Master Recall List. (Doc. #26, Exh. 12, pp. 50-53).

**Paragraph A(1)(a)** of this Supplemental Document provides, in part, that the following employees are eligible for inclusion on the Master Recall List:

> Employees with two (2) or more years of Company service who have been on layoff in excess of six (6) months from a bargaining unit covered by the respective Main Labor Contract.

(Doc. #26, Exh. 12, p. 50).

**Paragraph B** of this Supplemental Document states in part:

B.  Placement of employees from the Master Recall List will be accomplished in the following manner:

* * *

3.  Once an employee on the Master Recall List, as a result of a Plant or Partial Plant closing, has been placed at a Company operation on an open job, the employee will carry his/her Company service and previous bargaining unit seniority to the new bargaining unit. The employee's recall and seniority rights at the home operation will be terminated.

4.  Once an employee on the Master Recall List, as a result of being eligible by the terms of A 1 a) above has been placed at a Company operation on an open job, the employee will take day one seniority in the new bargaining unit and will retain recall rights to his/her prior bargaining unit.

(Doc. #26, Exh. 12, p. 51).

IV. **THE PRIOR DECISION AND ENTRY**

The Court's prior Decision and Entry adopted in whole the first Report and Recommendations. The Court therefore dismissed Count I of Plaintiff's Complaint, which sought to raise a claim under §301 of the Labor Management Relations Act, 20 U.S.C. §185. Plaintiff based his §301 claim on the assertion that Defendant International improperly stripped him of his recall and seniority rights under the applicable CBA. The Court determined that Count I failed to state a violation of §301 because the allegations of the Complaint did not show that Defendant International breached the terms of the CBA. *See* Doc. #19 at 8-9; Doc. #24 at 2-3.

As explained in the first Report and Recommendations, an October 1, 2002 Supplemental Document (supplementing the CBA) "provides in unambiguous language that if an employee: (1) is laid off as a result of a full or partial plant closing and is placed on a Master Recall List and (2) accepts a position at a new facility rather than awaiting recall to his original facility, then 'recall and seniority rights at the home operation will be terminated." (Doc. #19 at 8-9)(quoting, in part, paragraph B(3) of the October 1, 2002 Supplemental Document). Plaintiff's factual allegations in his Complaint acknowledged "that he was on the Master Recall List and that sometime before the June 14, 2006 recall at Springfield he accepted a position at the Melrose Park Facility." (Doc. #19 at 9). Having accepted the position in Melrose Park, Plaintiff forfeited his seniority and recall rights under paragraph B(3) of the October 1, 2002 Supplemental Document. Consequently, Defendant International's refusal to recall Plaintiff to the Springfield, Ohio plant did not violate the CBA, and Plaintiff's §301 claim – as framed in the Complaint – therefore failed to state a claim upon which relief can be granted. (Doc. #19 at 8-9).

In an attempt to avoid this conclusion, Plaintiff relied on paragraph A(1)(a) of the October 1, 2002 Supplemental Document, which provided that the following employees were eligible for inclusion on the Master Recall List:

> Employees with two (2) or more years of Company service who have been on layoff <u>in excess of six (6) months</u> from a bargaining unit covered by the Main Labor Contract.

(Doc. #19 at 7) (emphasis added) (quoting paragraph A(1)(a) of the October 1, 2002 Supplemental Document). Yet the Court determined that Plaintiff did not qualify under this paragraph for inclusion on the Master Recall List. The first Report explained, "Although Plaintiff ... alleges in his Complaint that he was subject to two periods of layoff lasting a total of approximately six months, *see* Doc. #1 at ¶25, nothing in the Complaint indicates that these periods of layoffs occurred before he accepted the position at the Melrose, Illinois facility, thus terminating his recall rights to Springfield, Ohio." (Doc. #19 at 9-10).

In his Objections to the Report and Recommendations, Plaintiff added a new allegation, one not set forth in his Complaint, that he was laid off by Defendant International for longer than six months between March 30, 2001, and September 7, 2004. This new allegation triggered the decision to allow Plaintiff to amend his Complaint "as to Count I, setting forth his newly added factual theory." (Doc. #26 at 3-4).

V.  DISCUSSION

   A.  **Motions to Dismiss**

Defendants contend that Plaintiff's Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted.

To determine whether a Complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

To state a plausible, non-speculative claim, the Complaint need only set forth a short and plain statement of the claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a). This does not require detailed factual allegations, yet it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct.1937, 1949 (2009)(*Twombly* citations omitted); *see Eidson v. State of Tn. Dept. of Children's Svs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("[A] complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory.... Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

### B. Collective Bargaining Agreements

"The enforcement and interpretation of collective bargaining agreements under §301 [of the LMRA] is governed by substantive federal law. However, traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies." *Maurer v. Joy Technologies, Inc.*, 212 F.3d 907, 915 (6th Cir. 2000).

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for

8

guidance.... Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.

*Maurer*, 212 F.3d at 915; *see Yolton v. El Paso Tennessee Pipeline* Co., 435 F.3d 571, 578-79 (6th Cir. 2006); *see also Roeder v. American Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999) ("To determine if the CBA was breached, we look to the plain meaning of the agreement."); *Patton v. Budd Co.*, 229 Fed.Appx. 380, 385 (6th Cir. 2007).

    C.    <u>Analysis</u>

**1.**
**Has Plaintiff's Right to Recall to the Springfield Plaint Expired?**

Defendant International argues that Count I of Plaintiff's Amended Complaint must be dismissed because the plain language of the applicable Collective Bargaining Agreement provides that Plaintiff's recall and seniority rights at the Springfield, Ohio plant have terminated.

Plaintiff contends that on June 14, 2006, the date he applied for inclusion on the Master Recall List, he was eligible for such inclusion because he had been on layoff longer than six months – since March 30, 2001. (Doc. #32 at p. 3). Plaintiff's argument is supported by paragraph A(1)(a) of October 1, 2002 Supplemental Document, which provides just this – inclusion on the Master Recall List for those, like Plaintiff, who were (1) employed by the Company two years or more and (2) "on layoff in excess of six month...." (Doc. #26, Exh. 12, p. 50). Plaintiff's Amended Complaint, moreover, raises the allegation (unlike his original Complaint) that he was laid off from the Springfield plant longer than six months, beginning on March 30, 2001 and lasting until September 7, 2004. (Doc. #26, ¶25). In light of paragraph A(1)(a), Plaintiff's Amended Complaint

9

provides the crucial piece – allegations concerning a longer-than-six-month layoff from Springfield – missing from his original Complaint. *See* Doc. #24 at 3-4. Plaintiff has therefore alleged sufficient facts to show that he qualified for inclusion on the Master Recall List under paragraph A(1)(a) on the date he began working at the Melrose Park facility. But the parties' conflict does not end there.

Plaintiff asserts that paragraph B(4) of the October 1, 2002 Supplemental Document applies to him. Defendants read paragraph B(4) differently than Plaintiff.

Paragraph B(4) provides:

> Once an employee on the Master Recall List, as a result of being eligible by the terms of A 1 a) above has been placed at a Company operation on an open job, the employee will take day one seniority in the new bargaining unit and **will retain recall rights to his/her prior bargaining unit**.

(Doc. #26, Exh. 7, p. 51)(emphasis added). Paragraph B(4) applied to Plaintiff on September 7, 2004 when he accepted employment at the Melrose Park facility because he met both its requirements. As explained above, *supra*, p. 9, Plaintiff's Amended Complaint alleges facts sufficient to show that he was qualified to be on the Master Recall List under paragraph A(1)(a), and he was placed on an open position at the Melrose, Illinois facility.

Applying paragraph B(4) to Plaintiff, its plain language provides that on September 7, 2004, he retained his recall rights to his prior bargaining unit, the Springfield plant. The parties disagree about what precise rights Plaintiff retained.

Defendant International and the Union Defendants contend that Plaintiff's seniority and recall rights to Springfield continued only through October 27, 2004, when his right to accumulate seniority in the Springfield plant were broken by the terms of the Main Labor Contract. This argument is built on the premise that an employee's seniority rights and right to recall can be "broken" under the terms of the Main Labor Contract by certain events. This much is correct.

10

The Main Labor Contract provides:

> In determining an employee's length of service for seniority purposes only, computation will begin on the date the employee began work in the bargaining unit, **unless his seniority has been broken**, in which case computation will begin on the date the employee began working in the bargaining unit subsequent to the last break in seniority....

(Doc. ##26, Exh. 7, ¶658)(emphasis added). Applying this provision to Plaintiff, his seniority began to accumulate at the Springfield, Ohio plant on his first day of work there, September 2, 1997, and continued to accumulate unless it was "broken." *Id*.

When, if ever, was Plaintiff's seniority "broken"?

The Main Labor Agreement provides a number of event that will cause an employee's accumulation of seniority to be broken such as resignation or termination. (Doc. #26, Exh. 7, ¶s 658-660). Most importantly for the present case, an employee's accumulation of seniority is broken upon either (1) a layoff lasting more than three years or (2) the length of employment, whichever period is longer. *Id*. at ¶667. The applicable language in the Main Labor Contract specifically provides that an employee's seniority in a bargaining unit shall be broken when:

> An employee who has acquired seniority who has been terminated due to layoff and a period of more than three (3) years or a period equal to the seniority he had acquired at the time of such termination, whichever is greater, has elapsed since he last worked for the Company. This provision will be applied separately with respect to each bargaining unit in which an employee has seniority rights....

(Doc. #26, Exh. 7, ¶667; *see also* ¶658). Applying this provision to Plaintiff without considering the fact that he began to work at the Melrose Park plant on September 7, 2004, his seniority rights would have been broken on October 28, 2004. This date is determined in three steps as follows:

1. On September 2, 1997, Plaintiff began employment at the Springfield, Ohio plant and he began to accumulate seniority there.

2. On the date he was laid off from the Springfield plant (March 30, 2001), he

11

>    had accumulated three years, six months, and twenty-eight days of
>    seniority.
>
> 3. Adding further three years, six months, and twenty-eight days to March 30,
>    2001 (the length of his employment) would cause his seniority to stop
>    accumulating on October 28, 2004.

*See* Doc. #26, Exh. 7, ¶667; *see also* ¶658.

With this October 28, 2004 date in mind, Defendant International acknowledges that when Plaintiff "accepted the Melrose Park position on September 7, 2004, he still retained his recall rights to Springfield, but those rights only remained in effect through October 27, 2004." (Doc. #29). The Unions Defendants agree. Plaintiff disagrees, arguing that under paragraph B(4), "he and others should have retained their rights to recall to the prior bargaining unit.... The Company has not honored this. Nor have the Union Defendants sought to enforce these rights for [Plaintiff]." (Doc. #32 at 4).

What seniority and recall rights did Plaintiff retain under paragraph B(4) once he accepted employment at the Melrose Park facility?

The answer is: On September 7, 2004, Plaintiff retained the seniority he had accumulated along with the right to recall to the Springfield plant. Defendants' contention that his seniority and right to recall to Springfield were broken later, on October 28, 2004, under paragraph 667 of the Main Labor Contract lacks merit. Under the plain language of paragraph 667, an employee experiences a break in the accumulation of seniority when he is "terminated due to layoff..." Plaintiff's termination due to layoff ended on September 7, 2004 when he began working at Melrose Park. Because he was no longer on layoff as of September 7, 2004, he no longer satisfied the first requirement of paragraph 667 – i.e., he was no longer an employee "terminated due to layoff...." Because of this, neither triggering event described later in paragraph 667 applied to him, and consequently neither event could trigger a break in his seniority or his right to recall to the Springfield plant. Defendants' reliance on paragraph 667 to establish a break in the accumulation of Plaintiff's seniority and right to recall to the Springfield

plant is therefore misplaced.

In addition, this reading of paragraph 667 coincides with paragraph B(4)'s broad promise that an employee "will retain recall rights to his/her prior bargaining." Paragraph B(4) does not contain any language specifically applying paragraph 667's break in seniority for the formerly laid off employees, then re-employed employees, it describes. And paragraph B(4) does not contain any language restricting its promise to a qualifying employee (i.e., an employee qualifying under A(1)(a)) that he or she "will retain recall rights to his/her prior bargaining unit."

Defendants' arguments also conflict with the broad purpose of the Master Recall List as set forth in the October 2, 2002 Supplemental Document, which states, "A Master Recall List will be developed to expand employment opportunities for long-service employees on layoff for any reason...." (Doc. #26, Exh. 12, p. 50). Defendants' reading of paragraph B(4) would restrict Plaintiff's employment opportunities by eliminating his right to recall to Springfield. This is contrary to the parties' intent "to expand employment opportunities for long-service employees on layoff for any reason...." (Doc. #26, Exh. 12, pp. 51).

Defendant International argues that the Collective Bargaining Agreement "does not provide a basis for [Plaintiff] to argue that his recall rights somehow *increased* when he accepted the Melrose Park position, or that the expiration of those rights was tolled by the acceptance of the position." (Doc. #29 at 14). This contention lacks merit because Plaintiff's recall rights were not increased under the above analysis. As discussed, paragraph 667 did not apply to him and did not end the right to recall to Springfield, Ohio he held under paragraph B(4). He is not claiming an increase in that right to recall; he instead seeks to enforce the right to recall to Springfield he held on September 7, 2004, which was not broken thereafter, as discussed above. As to tolling, the concept is inapplicable again because paragraph 667 does not apply, and he therefore retained his right to be recalled to Springfield on and after September 7, 2004. It should be noted that

13

this does not mean Plaintiff's seniority at the Springfield plant continued to accumulate. It did not because he no longer worked in that particular bargaining unit. *See* Doc. #26, Exh. 7, ¶658. He therefore held the length of seniority he had earned at the Springfield plant as of September 7, 2004, no more, no less.

Accordingly, under the allegations of Plaintiff's Amended Complaint, his right to recall to the Springfield, Ohio plant has not terminated.

## 2.
## Remaining Contentions

Defendant International contends that paragraph B(4) "is susceptible to only one reasonable interpretation – that Plaintiff's seniority reverted back to 'day one' at the moment he accepted the position at Melrose Park." (Doc. #29 at 12). This is correct as to when Plaintiff began to accumulate seniority at the Melrose Park facility. Correct because paragraph B(4) stated, "the employee will take day one seniority in the new bargaining unit..." (Doc. #26, Exh. 7, p. 51). But paragraph B(4) cannot be reasonably read as meaning that Plaintiff's seniority at the Springfield plant reverted back to "day one" on the date he began to work at the Melrose Park facility. This is so because paragraph B(4) plainly provides that Plaintiff retained his "recall rights to his ... prior bargaining unit," the Springfield, Ohio facility. The phrase "day one" only appears in the phrase concerning to the accumulation of seniority at his new bargaining unit in the Melrose Park facility. This phrase, consequently, did not cause Plaintiff's seniority at the Springfield plant to revert to "day one."

Defendant Unions contend that Plaintiff's Amended Complaint again alleges that he lost his position at the Springfield plant as a result of a "plant closing" and that the Court has previously determined under paragraph B(3) of the October 1, 2002 Supplemental Document that Plaintiff did not retain any recall rights. Defendant Unions' contention is well taken, as previously determined in this case. *See* Doc. #19, 24. As a result, to the extent Plaintiff's claims in his Amended Complaint are based on a "plant

14

closure" at the Springfield, Ohio plant, he retained no right to recall under paragraph B(3). This conclusion, however, does not eliminate the possibility that Plaintiff retained a right to recall under paragraph B(4) because he also alleges in his Amended Complaint that he was subject to a layoff beginning on March 31, 2001 until September 7, 2004. (Doc. #26, ¶25). These allegations, when read in light of Plaintiff's other allegations, raise a plausible, non-speculative claim that Defendant International violated paragraph B(4) of the October 1, 2002 Document and that the Union Defendants breached their duty of fair representation under §301 of the Labor Management and Relations Act. *See* Doc. #26 at pp. 6-11. Plaintiff, moreover, is permitted to plead alternative claims in his Amended Complaint. *See* Fed. R. Civ. P. 8(d)(2).

The Union Defendants contend that Count III of Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because there is no independent cause of action or claim for "futility of Plaintiffs' exhausting the UAW's Internal appeal process," as Plaintiff asserts. (Doc. #26, p. 11). The Union Defendants reason, "if this Court holds that Plaintiff fails to state a claim upon which relief can be granted in Counts One and Two, there is no claim stated in Count Three upon which relief can be granted." (Doc. #27, p. 14). For the above-state reasons, Plaintiff's claims in Counts I and II survive Defendants' Motions to Dismiss, and therefore the premise of the Union Defendants' argument does not support a dismissal of Count III at this point in the case.

Defendant International argues that Plaintiff's breach of contract claim must be dismissed to the extent it seeks back pay or other monetary damages because the October 1, 2002 Supplemental Document explicitly precludes an award of money damages. Plaintiff has not responded to, or argued against, this theory. The applicable provision states, "The Company will not entertain grievances on back-pay liability as a result of the implementation of the provisions of the Master Recall List. If an employee identifies an error in placement, the Company will correct it in the next available job opening to be filled through the Master Recall List." (Doc. #26, Exh. 12, p. 52). In the absence of

15

opposition by Plaintiff, the remedy Plaintiff may seek does not include back-pay liability and only requires Defendant International to correct the error in placement "in the next available job opening to be filled through the Master Recall List." *Id*. As a result, if Plaintiff proves Count I of the Amended Complaint, the Collective Bargaining Agreement precludes Plaintiff from recovering back pay or monetary damages against Defendant International. *See id*.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) UAW Local 402, UAW Local 98, and UAW Local 6's Motion to Dismiss (Doc. #27) be GRANTED in part to the extent Plaintiff's Amended Complaint asserts a violation of Paragraph B(3) of the October 1, 2002 Supplemental Document, and be otherwise DENIED in remaining part;

2. Defendant International Truck and Engine Corporation's Motion to Dismiss Count I of Plaintiff's First Amended Complaint (Doc. #28) be GRANTED in part to the extent Plaintiff seeks to recover back pay or other monetary damages under Count I of the Amended Complaint, and be otherwise DENIED in remaining part.

November 12, 2009

                s/Sharon L. Ovington
                Sharon L. Ovington
                United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District

Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).