IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD G. ALLEN, :

    Plaintiff, :

    vs. : Case No. 3:07cv361

INTERNATIONAL TRUCK AND : JUDGE WALTER HERBERT RICE
ENGINE CORP., et al., :

    Defendants. :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S OBJECTIONS
(DOC. #38) TO SECOND REPORT AND RECOMMENDATIONS OF
MAGISTRATE JUDGE (DOC. #37); DECISION AND ENTRY
OVERRULING UAW DEFENDANTS' OBJECTIONS (DOC. #42) TO
SECOND REPORT AND RECOMMENDATIONS OF MAGISTRATE
JUDGE (DOC. #37); MOTION TO DISMISS OF UAW DEFENDANTS
(DOC. #27) SUSTAINED IN PART AND OVERRULED IN PART; MOTION
TO DISMISS OF DEFENDANT INTERNATIONAL TRUCK AND ENGINE
CORPORATION (DOC. #28) SUSTAINED IN PART AND OVERRULED IN
PART; SECOND REPORT AND RECOMMENDATIONS OF MAGISTRATE
JUDGE (DOC. #37) ADOPTED, AS SUPPLEMENTED HEREIN;
CONFERENCE CALL SET

---

Plaintiff Ronald Allen ("Plaintiff" or "Allen") brings this putative class action

against his employer and the union that represents him.[1] The basic premise that

---

[1]Throughout his Amended Complaint (Doc. #26), Allen refers to "Plaintiffs,"
because this litigation has been brought as a putative class action. Before a class
action has been certified, however, members of the putative class are not parties
to the litigation. Therefore, this Court uses the singular, "Plaintiff," throughout this

supports his claims is that he has been wrongfully denied participation on the Master Recall List, established by the collective bargaining agreement ("CBA") and accompanying documents governing his employment.[2] In particular, Plaintiff alleges that he was transferred from the manufacturing facility of his employer, Defendant International Truck and Engine Corporation ("International Truck"), located in Springfield, Ohio, to one located in Melrose Park, Illinois. Plaintiff alleges herein that, as a result of that transfer, he has been denied participation on the Master Recall List. The Plaintiff has brought this litigation against International Truck and the union which represents him in his employment, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), and three of its local unions, UAW Local 402, UAW Local 98 and UAW Local 6.[3]

On March 31, 2009, this Court entered a Decision in which it overruled the Plaintiff's Objections (Doc. #20) to the Report and Recommendations of the United States Magistrate Judge Sharon Ovington (Doc. #19). See Doc. # 24. With that judicial filing, the Magistrate Judge had recommended that this Court sustain International Truck's Motion to Dismiss (Doc. #13). With its motion, International Truck sought dismissal of Counts I, III and VI in Plaintiff's Complaint. Of particular present importance, with Count I, Plaintiff purported to set forth a claim of breach of contract under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

---

Decision to refer to Allen, the only Plaintiff named herein.

[2]The CBA is comprised of the Master Labor Contract and a number of Supplemental Documents.

[3]The Court will refer to the UAW and its three local unions, collectively, as the UAW Defendants.

In overruling the Plaintiff's Objections to the recommendation of the Magistrate Judge that Count I be dismissed, this Court declined to consider a factual theory in support of that claim, because Plaintiff had introduced it for the first time in his Objections. Doc. #24 at 3. The Court did, however, permit the Plaintiff to seek leave to file an amended complaint, as to Count I, setting forth his newly added factual theory. Id. at 4.

After having been granted leave, the Plaintiff has filed his Amended Complaint (Doc. #26). Therein, he has set forth two substantive claims for relief.[4] Count I is a claim for breach of contract under § 301 against International Truck, alleging that it breached the Main Labor Contract and its Supplemental Documents, by stripping him of his seniority rights and by refusing to honor his recall rights. Count II is a claim of breach of duty of fair representation against the UAW Defendants, in which Plaintiff alleges that those Defendants breached their duties of fair representation by refusing to honor and/or to enforce his recall rights and seniority rights.

Both the UAW Defendants and International Truck moved to dismiss Plaintiff's Amended Complaint (Doc. #26). See Doc. #27 (UAW Defendants' Motion to Dismiss); Doc. #28 (International Truck's Motion to Dismiss). This Court referred those motions to Judge Ovington for a Report and Recommendations. The Magistrate Judge has recommended that the Court sustain those motions in part and that it overrule them in part. See Doc. #37.

---

[4]In addition to the two substantive claims, the Plaintiff alleges in Count III of his Amended Complaint that it would be futile for him to attempt to utilize the internal appeal process provided by the UAW International Constitution.

This case is now before the Court on the Objections to the Second Report and Recommendations of the Magistrate Judge filed by Plaintiff (Doc. #38) and by the UAW Defendants (Doc. #42). As a means of analysis, the Court will initially set forth the procedural standards that are applied whenever a court rules on a motion to dismiss, following which it will turn to the Plaintiff's and the UAW Defendants' Objections to the Second Report and Recommendations of the Magistrate Judge.[5]

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the plaintiff's factual allegations as true and construe those allegations in the manner most favorable to the plaintiff. Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). A court is not, however, compelled to accept as true "a legal conclusion couched as a factual allegation." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009). In addition, "the plaintiff must plead sufficient factual matter to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Tp. of Comstock, — F.3d —, 2010 WL 307899 (6th Cir. 2010) (citing Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949-50 (2009)). See also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The Iqbal Court stressed:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Bell,] 550 U.S., at 555. Nor

---

[5]Whenever it rules on objections to the report and recommendations of a Magistrate Judge on a dispositive motion, such as a motion to dismiss, the District Court must apply a de novo standard of review. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); United States Fidelity & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088 (6th Cir. 1992). Therefore, this Court has applied such a standard of review to the Second Report and Recommendations (Doc. #37).

> does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

— U.S. at —, 129 S.Ct. at 1949. Herein, it is permissible to consider the Main Labor Contract and its Supplemental Documents, because they are central to Plaintiff's claims and are attached to his Amended Complaint as exhibits, without transforming the pending motions into those seeking summary judgment. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

As indicated, Judge Ovington recommended in her Second Report and Recommendations that this Court sustain in part and overrule in part the Defendants' Motions to Dismiss. In particular, that judicial officer recommended that those motions be sustained as they related to Plaintiff's claim for an award of back pay based upon the allegations set forth in Count I, as well as Plaintiff's claim under ¶ B(3) of the October 1, 2002, letter, the Supplemental Document which established the Master Recall List. See Doc. #37 at 16. That judicial officer recommended that the Court otherwise overrule those motions. Id. Plaintiff has objected to the portion of the Second Report and Recommendations which recommended sustaining the Defendants' motions, in part, while the UAW Defendants have objected to the portion of that judicial filing in which Judge Ovington recommended that their Motion to Dismiss (Doc. #27) be overruled in part. The Court now rules on those Objections, beginning its analysis by reviewing certain central allegations set forth in Plaintiff's Amended Complaint (Doc. #26) and the key provisions in the parties' collective bargaining agreement, following which the Court will restate general principles governing the enforcement and

interpretation of collective bargaining agreements. The Court will then rule on the pending Objections, addressing first those filed by the Plaintiff.

As is noted above, Plaintiff obtained leave of court to file his Amended Complaint, setting forth a new factual theory. In her Second Report and Recommendations, Judge Ovington discussed that newly added factual theory:

> Plaintiff's Amended Complaint asserts the following: Plaintiff and other employees of Defendant International and other members of the Defendant Unions have layoff and recall rights controlled by seniority pursuant to the Main Labor Contract. Under the Main Labor Contract, Members of UAW locals 6, 98, and 402 with the lowest seniority are laid off first; employees of Defendant International with the highest seniority are recalled from layoff and returned to work first, before new hires or temporary employees. (Doc. #26, ¶s 33, 34). "Any change in the seniority rights of member[s] of Local 6, 98, and/or 402 must be in accordance with the Main Labor Contract." (Doc. #26, ¶34).
> On September 2, 1997, Defendant International hired Plaintiff to work at its Springfield, Ohio plant.
> "As of March 30, 2001, [Plaintiff] was laid off from the Springfield, Ohio plant, after having put in three years, six months and twenty-eight days of service. That lay-off lasted until September 7, 2004." (Doc. #26, ¶25).
> Defendant International has acknowledged that the Springfield Plant was closed as of October 1, 2002. (Doc. #26, ¶26).
> Defendant International and the Defendant Unions did not automatically place Plaintiff and over 700 others on the Master Recall list. "If the Company had done so, then [Plaintiff] and others would have retained their seniority rights under the Master Recall document." Id. at ¶27 (citation omitted).
> On September 1, 2004 – while he was still on layoff from the Springfield, Ohio plant – Plaintiff applied to Defendant International to be placed on the Master Recall List. "Under the terms of the Master Recall document, [Plaintiff] was eligible for the Master Recall List by virtue of having been laid off for more than six months. This eligibility is under A.1.(a) of the Master Recall document." (Doc. #26, ¶28).
> On September 7, 2004, Plaintiff and others were recalled – not to the Springfield, Ohio plant – but to Defendant International's plant in Melrose, Illinois "under the terms of the Master Recall document." (Doc. #26, ¶29). Plaintiff "was given Day One Seniority, i.e., stripped of seven years of prior service under the B.4 provision of the Master Recall document. Under B.4 of the Master Recall document, [Plaintiff] and others should have then

retained their recall rights to their prior unit. The Defendant Company has not honored this...." (Doc. #26, ¶29) (citation omitted). According to Plaintiff, Defendant International's decision to strip him of his seniority and recall rights violated the terms of the applicable Collective Bargaining Agreement.

On November 7, 2005, Plaintiff was laid off from work at the Melrose Park Facility. This layoff lasted about six weeks, until December 19, 2005. (Doc. #26, ¶31).

On or about June 14, 2006, Defendant UAW Local 402 issued a bulletin indicating, "The Company sent out approximately 67 call back letters on June 13, 2006. Employees who still have recall rights should be receiving a letter." (Doc. #26, ¶32) (citation omitted). Plaintiff and the other "similarly situated active Master Recall List employees did not receive such a recall letter." (Doc. #26, ¶33). As a result, he was not recalled to work at Defendant International's plant in Springfield, Ohio.

On January 3, 2007, Plaintiff was again laid off from work at the Melrose Park facility. This layoff lasted more than five months, until May 21, 2007. (Doc. #26, ¶31).

Doc. #37 at 2-3.[6]

Judge Ovington also discussed the pertinent language from the Main Labor Contract and the Supplemental Documents:

The applicable Collective Bargaining Agreement consists in large part of a Main Labor Contract. (Doc. #26, Exhibits 3-10). Article XVI of the Main Labor Contract, titled "SENIORITY," sets forth the parties' agreements regarding the layoff and recall of employees. (Doc. #26, Exh. 7, ¶s 638, et seq.). Seniority is generally determined by the employee's length of service with Defendant International. Id. at ¶ 638. Length of service begins for purposes of determining seniority on the date an employee begins working in the bargaining unit. Id. at ¶658.

The period constituting an employee's seniority can be "broken" as a result of various events, including by a layoff lasting in excess of either three years "or a period equal to the seniority he had acquired at the time of such termination, whichever is greater, has elapsed since he last worked for the Company...." Id. at ¶s 658, 667.

---

[6]Neither the Plaintiff nor the UAW Defendants have argued in their respective Objections that Judge Ovington misperceived the nature of Plaintiff's newly added factual theory.

- 7 -

> Provisions concerning layoff and recall also appear in the Supplemental Documents to the Main Labor Contract. E.g, Doc. #26, Exhs. 11, 12. The Supplemental Document (a letter) dated October 1, 2002 addresses how employees qualify for inclusion on, or exclusion from, the Master Recall List. (Doc. #26, Exh. 12, pp. 50-53).
>
> Paragraph A(1)(a) of this Supplemental Document provides, in part, that the following employees are eligible for inclusion on the Master Recall List:
>
> > Employees with two (2) or more years of Company service who have been on layoff in excess of six (6) months from a bargaining unit covered by the respective Main Labor Contract.
>
> (Doc. #26, Exh. 12, p. 50).
>
> Paragraph B of this Supplemental Document states in part:
>
> > B. Placement of employees from the Master Recall List will be accomplished in the following manner:
> >
> > * * *
> >
> > 3. Once an employee on the Master Recall List, as a result of a Plant or Partial Plant closing, has been placed at a Company operation on an open job, the employee will carry his/her Company service and previous bargaining unit seniority to the new bargaining unit. The employee's recall and seniority rights at the home operation will be terminated.
> >
> > 4. Once an employee on the Master Recall List, as a result of being eligible by the terms of A(1)(a) above has been placed at a Company operation on an open job, the employee will take day one seniority in the new bargaining unit and will retain recall rights to his/her prior bargaining unit.
>
> (Doc. #26, Exh. 12, p. 51).

Id. at 4-5.[7]

In Winnett v. Caterpillar, Inc., 553 F.3d 1000 (6th Cir. 2009), the Sixth Circuit reiterated that "[t]he enforcement and interpretation of collective bargaining agreements under Section 301 is governed by substantive federal law," while

---

[7] Judge Ovington utilized the exhibit numbers of the documents attached to Plaintiff's Amended Complaint, which correspond to the attachment numbers assigned by the Court's CMECF system. In addition, the Supplemental Document Judge Ovington referred to in the quoted passage (the letter under date of October 1, 2002) is the "Master Recall document" to which the Plaintiff refers in his Amended Complaint.

stressing that "courts should apply traditional rules for contractual interpretation so long as their application is consistent with federal labor policies." Id. at 1008 (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957)). Accord Maurer v. Joy Technologies, Inc., 212 F.3d 907, 915 (6th Cir. 2000).

In his Objections (Doc. #38), Plaintiff argues that the Magistrate Judge erred in recommending that his claim, arising out of his being placed on the Master Recall List as a result of a plant closing, must be dismissed in accordance with ¶ B(3) of the October 1, 2002, letter. Additionally, he asserts that it would be unconscionable to deny him back pay and other damages for the Defendants' violation of ¶ B(4). As a means of analysis, the Court will address the Plaintiff's two propositions in the above order.

The Court rejects the Plaintiff's assertion that the Magistrate Judge erred in recommending that his claim, arising out of being placed on the Master Recall List as a result of a plant closing, must be dismissed in accordance with ¶ B(3) of the October 1, 2002, letter, because that issue has been addressed in the Magistrate Judge's initial Report and Recommendations (Doc. #17). This Court, in its Decision of March 31, 2009, overruled the Plaintiff's Objections to that judicial filing and adopted same. See Doc. #24. Thus, this particular objection by the Plaintiff has been previously resolved. Moreover, even if the question had not been previously resolved, the Court would reject the Plaintiff's argument, since ¶ B(3) clearly provides that the recall rights at their "home operations," of employees placed on the Master Recall List as a result of a plant closing, are terminated when placed at an open position with the Company. Therefore, if Plaintiff was placed on

the Master Recall List, as a result of a plant closing, his recall rights at the Springfield plant were terminated when he accepted employment at the Melrose Park plant.

Plaintiff also argues that it would be unconscionable to deny him the recovery of back pay, flowing from the Defendants' violation of ¶ B(4) of the October 1, 2002 letter. This Court does not agree. On October 1, 2002, a representative of International Truck wrote a letter containing a proposal to a representative of the UAW, who accepted the proposal, thus creating the Master Recall List. That proposal clearly states that International Truck will not entertain grievances for back pay arising out of the implementation of the Master Recall List. By accepting International Truck's proposal, the UAW acceded to the provision that International Truck would not entertain grievances pertaining to requests for back pay arising out of the implementation of the Master Recall List. In other words, the exclusion of grievances on back pay is part and parcel of the establishment of that list.

The Plaintiff has analyzed the question of unconscionability under the law of New York, while International Truck has utilized Ohio law.[8] There is no material distinction between the laws of those states in that regard. Under both Ohio and New York law, courts must consider both procedural and substantive unconscionability when determining whether a contract is unconscionable. See Taylor Building Corp. of America v. Benfield, 117 Ohio St.3d 353, 359, 884 N.E.2d 12, 20 (2008); Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10,

---

[8]In their Memorandum in Opposition (Doc. #44) to the Plaintiff's Objections, the UAW Defendants have not relied on the law of a particular state.

534 N.E.2d 824, 828, 537 N.Y.S.2d 787, 791 (1988). In Collins v. Click Camera & Video, Inc., 86 Ohio App.3d 826, 621 N.E.2d 1294 (1993), the court elaborated on substantive and procedural unconscionability:

> Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability ….
> Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question." Johnson v. Mobil Oil Corp. (E.D.Mich. 1976), 415 F. Supp. 264, 268.

Id. at 834, 621 N.E.2d at 1299.

Herein, the allegations in the Plaintiff's Amended Complaint are not sufficient to call into question whether making back pay unavailable is either substantively or procedurally unconscionable. On the contrary, that limitation could not be substantively unconscionable, given that it is a quid pro quo of the creation of the Master Recall List. Moreover, given that the UAW was a party to the October 1, 2002, letter, this Court could not conclude that the exclusion of back pay therefrom is procedurally unconscionable.

Accordingly, the Court overrules the Plaintiff's Objections (Doc. #38) to the Magistrate Judge's Second Report and Recommendations (Doc. #37).

In her Report and Recommendations, Judge Ovington rejected the arguments set forth by the UAW Defendants in their Motion to Dismiss that the Plaintiff had

failed to set forth a claim that they had violated ¶ B(4) of the October, 2002, letter. Although she agreed with the UAW Defendants that a break in service would prevent the Plaintiff from having recall rights under ¶ B(4), the Magistrate Judge rejected their assertion that Plaintiff had a break in service in accordance with ¶ 667 of the Main Labor Contract. The UAW Defendants contend that the Magistrate Judge erroneously construed ¶ 667. This Court does not agree.

Paragraph 667 provides that seniority is considered broken when:

> An employee who has acquired seniority who has been terminated due to layoff and a period of more than three (3) years or a period equal to the seniority he had acquired at the time of such termination, whichever is greater, has elapsed since he last worked for the Company. This provision will be applied separately with respect to each bargaining unit in which an employee has seniority rights ….

Doc. #26 at Ex. 7, ¶ 667. Thus, for an employee to have his seniority broken under ¶ 667, the greater of three years or a period equal to the seniority an employee has accumulated must have elapsed since he last worked for International Truck. Judge Ovington noted that Plaintiff had commenced his employment with International Truck at its Springfield plant on September 2, 1997; and that he had accumulated three years, six months and twenty-eight days seniority, when he was laid off from the Springfield plant on March 30, 2001. Doc. 37 at 11-12. Adding three years, six months and twenty-eight days to March 30, 2001, means that the grace period (i.e., the greater of three years or the accumulated seniority) provided by ¶ 667, would expire on October 28, 2004. Id. at 12. Consequently, Judge Ovington concluded that Plaintiff's Amended Complaint contained allegations that the greater of three years or a period equal to the seniority Plaintiff had acquired when he was laid off had not "elapsed since he

[had] last worked for the Company," when Plaintiff was recalled to the Melrose Park plant on September 7, 2004. Accordingly, the Magistrate Judge recommended that this Court conclude that the allegations in the Plaintiff's Amended Complaint did not demonstrate that he had a break in service under ¶ 667 of the Main Labor Agreement.

The UAW Defendants argue that this Court should reject the recommendation of the Magistrate Judge in that regard, because it ignores the part of ¶ 667, which provides that it "will be applied separately with respect to each bargaining unit in which an employee has seniority rights." According to the UAW Defendants, given that Plaintiff was recalled to the Melrose Park plant, rather than to the Springfield plant, in September, 2004, more than three years, six months and twenty-eight days elapsed on October 28, 2004, since he had last worked in the bargaining unit for the Springfield plant. Therefore, he has suffered a break in service on that date and does not possess recall rights in accordance with ¶ B(4) of the pertinent Supplemental Document. This Court cannot agree with the UAW Defendants' construction of ¶ 667, because it ignores the parties' selection of the word Company in the phrase "has elapsed since he last worked for the Company." If International Truck and the UAW Defendants had intended ¶ 667 to provide for a break in service whenever the grace period had expired since the employee last worked in a particular bargaining unit, they would have used the phrase "has elapsed since he last worked in the bargaining unit" in that paragraph of the Main Labor Contract. Because they used Company instead, this Court is compelled to conclude that a break in service does not occur until the greater of three years or a period equal to his accumulated seniority has elapsed since the employee last

worked for the Company.  Given that the UAW Defendants have not demonstrated that Plaintiff alleged in his Amended Complaint that such a period has elapsed, this Court concludes that his Amended Complaint does not set forth allegations demonstrating that he had a break in service under ¶ 667.

Accordingly, the Court overrules the Objections of the UAW Defendants (Doc. #42) to the Second Report and Recommendations of the Magistrate Judge (Doc. #37).

In sum, the Court has overruled the Plaintiff's and the UAW Defendants' Objections to the Magistrate Judge's Second Report and Recommendations (Doc. #37).  The Court adopts that judicial filing, as supplemented herein.  In addition, the Court sustains in part and overrules in part the Motions to Dismiss filed by the UAW Defendants (Doc. #27) and International Truck (Doc. #28).

Counsel will note that the Court has scheduled a telephone conference call on Friday, March 5, 2010, at 8:30 a.m., for the purpose of selection a trial date and other pertinent dates leading to the resolution of this litigation.


February 26, 2010

            /s/ Walter Herbert Rice
            WALTER HERBERT RICE, JUDGE
            UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.