IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


RONALD G. ALLEN,                     :

      Plaintiff,                    :      Case No. 3:07-cv-361

                                     :

      vs.                           :
                                     :      JUDGE WALTER HERBERT RICE
INTERNATIONAL TRUCK AND
ENGINE CORPORATION, et al.,          :

      Defendants

---

DECISION AND ENTRY SUSTAINING DEFENDANT NAVISTAR INC.'S
MOTION FOR SUMMARY JUDGMENT (DOC. #85) AND MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA ("UAW"), UAW LOCAL 402,
UAW LOCAL 98, AND UAW LOCAL 6 (DOC. #87); OVERRULING AS
MOOT PLAINTIFF'S SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER (DOC. #79) AND PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DOC. #89); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS; TERMINATION ENTRY

---

Pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C.

§ 185, Plaintiff Ronald G. Allen, on behalf of himself and others similarly situated,

filed suit against his employer, International Truck and Engine Corporation (n.k.a.

"Navistar, Inc."), his union, UAW International, and several local union affiliates

(collectively, the "UAW Defendants"), seeking restoration of his seniority and recall

rights.  The Amended Complaint includes claims for breach of contract and breach

of the union's duty of fair representation.  Doc. #26.

This matter is currently before the Court on motions for summary judgment filed by Defendant Navistar (Doc. #85) and by the UAW Defendants (Doc. #87). Also pending is Plaintiff's Second Motion for a Temporary Restraining Order (Doc. #79) and Plaintiff's Motion for Preliminary Injunction (Doc. #89).  The Court has previously ordered that proceedings on these motions for injunctive relief be stayed pending a decision on the motions for summary judgment.  For the reasons stated below, the Court sustains Defendants' motions for summary judgment and overrules as moot Plaintiff's motions for injunctive relief.

I.    **Background and Procedural History**

Navistar manufactures trucks, buses, and engines at several plants around the United States.  Ronald G. Allen began working at Navistar's Springfield, Ohio, plant on September 2,1997.  Am. Compl. ¶¶15, 25.  As a union member, his employment was governed by the Collective Bargaining Agreement ("CBA"), which consisted of the Production & Maintenance Main Labor Contract and several Supplemental Documents. *Id.* at ¶2.    Allen was laid off on March 30, 2001, having served for three years, six months and twenty-eight days. *Id.* at ¶25.

Navistar maintained a Master Recall List to "expand employment opportunities for long-service employees on layoff for any reason, and for employees affected by a plant closing or partial plant closing."  Ex. 1-D to Doc. #86.  Employees with two or more years of service to Navistar who had been laid

off more than six months could make written application to be placed on the Master Recall List. Employees laid off as a result of a plant closing were automatically placed on the Master Recall List. *Id.*

On or about September 1, 2004, Allen, having accumulated more than two years of service and having been laid off for more than six months, applied for inclusion on the Master Recall List. Am. Compl. ¶28. Shortly thereafter, he was recalled to work at Navistar's Melrose Park plant in Chicago, Illinois. He began working there on September 7, 2004, and continues to be employed at that facility. *Id.* at ¶¶29-30. Allen, however, would like to be recalled to the Springfield, Ohio, facility, where his family still lives. Although the Springfield plant was closed on October 1, 2002, it started recalling workers in June of 2006. *Id.* at ¶¶26, 32.

Section B of the Supplemental Document, governing "Placement of employees from the Master Recall List," provides, in part, as follows:

2.   The most senior qualified employee on the Master Recall List will be offered placement on open jobs at the respective Company operation after all qualified employees at that operation have been recalled from layoff.

3.   Once an employee on the Master Recall List, as a result of a Plant or Partial Plant Closing, has been placed at a Company operation on an open job, the employee will carry his/her Company service and previous bargaining unit seniority to the new bargaining unit. The employee's recall and seniority rights at the home operation will be terminated.

4.   Once an employee on the Master Recall List, as a result of being eligible by the terms of A1a) above [because he has

3

> served two or more years and has been laid off more than 6
> months] has been placed at a Company operation on an open
> job, the employee will take day one seniority in the new
> bargaining unit and will retain recall rights to his/her prior
> bargaining unit.

Ex. 1-D to Doc. #86.

In accordance with paragraph B(4), when Allen began working at the Melrose Park plant, he was given "day one" seniority at that plant, meaning that the seniority he had accumulated as an employee at the Springfield plant did not carry over. Am. Compl. ¶29. Shortly after he began working at Melrose Park, Allen began talking to union leaders about the possibility of being recalled to Springfield. He was told that his recall rights to Springfield, his prior bargaining unit, would expire on October 28, 2004. Ex. 3 to Doc. #86.

On September 23, 2004, Allen filed a grievance challenging the impending expiration of his recall rights. He maintained that, under paragraph B(4) of the Master Recall letter, his recall rights to the Springfield facility should be retained indefinitely. Over the course of the next year, every union representative he talked to told him that his grievance lacked merit, and that his recall rights had expired on October 28, 2004. *Id.* They relied on Article XVI of the CBA, which governs seniority.

Section 2 of Article XVI provides that seniority shall be used to determine the order of layoffs and recalls. Ex. 1-C to Doc. #86, at ¶639. Section 5 of that Article states:

4

      In determining an employee's length of service for seniority purposes only, computation will begin on the date the employee began work in the bargaining unit, unless his seniority has been broken, in which case computation will begin on the date the employee began work in the bargaining unit subsequent to the last break in seniority, and no deductions will be made due to any reason.

      Seniority shall be considered broken in a bargaining unit when:

* * *

(e)    An employee who has acquired seniority has been terminated due to a layoff and a period of more than three (3) years or a period equal to the seniority he had acquired at the time of such termination, whichever is greater, has elapsed since he last worked for the Company. . .

*Id.* at ¶¶658, 667.

      Defendants interpret this provision to mean that an employee who accepts a Master Recall placement at a new facility does not retain indefinite recall rights to his home facility. "Rather, those recall rights last for either three years from the date of layoff, or for a period equal to the length of the employee's service at the prior bargaining unit, whichever is longer." Osborne Aff. ¶6; Ex. 2 to Doc. #86. Defendants maintain that Allen's recall rights to Springfield expired on October 28, 2004, three years, six months and twenty-eight days after he was laid off from the Springfield plant. Allen appealed the continuing denials of his grievance as far as he could. The third and final appeal was denied on June 22, 2006. Ex. 5-E to Doc. #86.

      On September 27, 2007, Allen filed suit on behalf of himself and others similarly situated, alleging that Navistar wrongfully stripped him of the seniority he

had accumulated before he accepted employment at the Melrose Park plant, and of his right to be recalled to his prior bargaining unit in Springfield, in violation of the CBA. In addition, he alleged that the UAW Defendants breached their duty of fair representation, and that all Defendants had conspired to violate his contractual rights. Doc. #1.

On March 29, 2008, Allen filed a Motion for Class Certification, seeking to represent a class composed of "all active members of the Master Recall List who have been stripped of their seniority and/or have had their recall rights disregarded by the Defendant [Navistar] and the Union Defendants." Doc. #12, at 2. At Defendants' request, the Court stayed proceedings on that motion pending resolution of Navistar's Motion for Partial Dismissal, Doc. #13. On March 31, 2009, the Court sustained the Motion for Partial Dismissal, but gave Allen leave to file an Amended Complaint. Doc. #24.

Allen filed his Amended Complaint on May 7, 2009, setting forth a § 301 breach of contract claim against Navistar, and a breach of duty of fair representation claim against the UAW Defendants. Doc. #26. Defendants then filed motions to dismiss the Amended Complaint. Docs. ##27, 28. On February 26, 2010, the Court sustained in part and overruled in part those motions. Doc. #47.

The parties then completed their briefing on the Motion for Class Certification. The Court held an evidentiary hearing on that motion on August 17,

6

2010, and overruled the motion on July 21, 2011.  Doc. #73.  Allen appealed that

decision, but the appeal was dismissed for lack of jurisdiction.

On June 28, 2011, Allen filed an Emergency Motion for Temporary

Restraining Order enjoining Navistar's hiring practices at the Springfield plant.  He

noted that a recent newspaper article indicated that Navistar was planning to recall

the remaining laid-off Springfield plant workers and to hire new workers.  Doc.

#72.  On July 27, 2011, following a telephone conference clarifying the scope of

the recall at issue, the Court denied that motion as moot.

On November 2, 2011, Allen filed a Second Motion for a Temporary

Restraining Order, citing a newspaper article dated August 25, 2011, concerning

Navistar's recall of the "last of its laid-off workers" to the Springfield plant.  Doc.

#79.  After that motion was fully briefed, Defendants filed their motions for

summary judgment.  Docs. ##85, 87.  On November 30, 2011, Allen filed a

Motion for a Preliminary Injunction enjoining Navistar from recalling workers with

less seniority than him.  Doc. #89.  At Navistar's request, on January 6, 2012, the

Court agreed to stay all proceedings related to the request for injunctive relief

pending a decision on the motions for summary judgment.  Those summary

judgment motions are now fully briefed.

II.    **Motions for Summary Judgment**

   A.    **Relevant Standard**

   Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930

F.2d 1150, 1156 (6th Cir. 1991).

   "Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241,

1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986).  Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations.  It is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond

the [unverified] pleadings" and present some type of evidentiary material in support

of its position. *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a

8

scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

9

1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561

(7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.

1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the

district court a duty to sift through the record in search of evidence to support a

party's opposition to summary judgment . . . ."). If it so chooses, however, the

court may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).

   **B.   Analysis**

   Allen has sued his employer for breach of contract and his union for breach

of duty of fair representation pursuant to § 301 of the Labor Management

Relations Act, 29 U.S.C. § 185.  Defendants all argue that summary judgment is

appropriate because Plaintiff's claims are time-barred, and because no reasonable

jury could find that Navistar breached the CBA or that the UAW Defendants

breached their duty of fair representation.  In addition, the UAW Defendants argue

that: (1) Allen's claims are barred because he failed to exhaust his internal union

remedies; (2) Allen has failed to state a claim against UAW Local 98; and (3) Count

III (alleging the futility of exhausting the Union's internal appeal process for other

putative class members) does not state an independent cause of action.

   Allen maintains that genuine issues of material fact preclude summary

judgment.[1]  Since Allen's claims are so clearly time-barred, the Court does not

---

   [1]  Allen alleges that there are factual disputes concerning whether the
closing of the Springfield plant constituted a "plant closing" or a "partial plant
closing" as those terms are used in the CBA, and whether Navistar breached the

reach Defendants' alternative arguments.

The parties agree that § 301 claims are subject to a 6-month statute of limitations. *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 172 (1983). The "claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. International Broth. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996).

The facts concerning the accrual of this cause of action are undisputed. In his Answers to Interrogatories, Allen admitted that he knew as early as September 23, 2004, that Defendants believed that his recall rights would expire on October 28, 2004. The Union Defendants refused to file a grievance on his behalf, but suggested that he file an appeal under Article 33 of the UAW Constitution. Allen did so on December 27, 2005. That appeal was denied as untimely. He filed a second appeal on January 18, 2006, but the Union found that its previous interpretation of the CBA was "obviously correct." Allen filed a third appeal on May 19, 2006. On June 22, 2006, this appeal was also denied and Allen was told that there was no further appeal from the decision. Ex. 3 to Doc. #86.

Defendants maintain that his claim accrued on June 22, 2006, at the very latest, because he knew then that the union was not going to take any further action on his grievance. *See Richards v. Local 134, Int'l Bhd. of Elec. Workers*,

---

CBA by refusing to honor his transfer requests. The second issue is outside the scope of the Amended Complaint. In any event, neither issue is material to the outcome of this case.

11

790 F.2d 633, 636 (7th Cir. 1986) ("The cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance.")

The Court agrees that Allen's claim accrued no later than June 22, 2006. Allen therefore had until December 22, 2006, to file suit. Because Allen did not file suit until September 27, 2007, Allen's claim is time-barred unless there is some equitable reason not to enforce the statute of limitations.

Allen maintains that Defendants should be equitably estopped from asserting a statute of limitations defense because they sent him a misleading letter in May of 2007. Allen was laid off from the Melrose Park plant from January 3, 2007, until May 21, 2007. Allen Decl. ¶4; Ex. 5 to Doc. #94. On May 11, 2007, he received a letter recalling him to work at the Melrose Park plant beginning May 21, 2007. The letter stated, in relevant part:

> Failure to report within the contractual 5-day period will result in removal from the Master Recall List and termination of employment (Production and Maintenance Main Labor Contract, Article XVI, Sec. 5, pp. 668). This section reads as follows:
>
> > "An employee who has been terminated due to layoff fails to report for work when recalled, within a period of five (5) working days . . . A break in seniority under this Subsection will only apply to the bargaining unit to which the employee fails to return." An employee who fails to report within the allotted five (5) days will still retain recall rights to their home facility."

Ex. 1 to Allen Decl.

According to Allen, after he received this letter, "it was my understanding that I was on the Master Recall List and further that I retained my recall rights to my home facility, the Springfield Assembly Plant." Allen Decl. ¶8. Defendants again rejected Allen's interpretation of the contract language. Allen argues that because he filed suit within six months of receiving this letter and learning that the UAW did not intend to honor his recall rights to the Springfield plant after all, his claim should be considered timely filed.

The doctrine of equitable estoppel is clearly inapplicable here. It prevents a defendant from succeeding on a statute of limitations defense if that defendant took active steps to prevent the plaintiff from timely filing suit. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424-25 (6th Cir. 2009). Elements of a claim of equitable estoppel are as follows:

> 1) there must be conduct or language amounting to a representation of a material fact; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998).

As a matter of logic, Allen could not have possibly relied on representations contained in the May 11, 2007, letter to his detriment. Allen knew no later than June 22, 2006, that the UAW and Navistar firmly believed that his recall rights to the Springfield plant had expired on October 28, 2004. The statute of limitations

13

on Plaintiffs claims therefore ran on December 22, 2006. Plaintiff did not receive the allegedly misleading letter until May 11, 2007. No matter how misleading the letter may have been, it could not have prevented Plaintiff from timely filing suit.

Because Plaintiff failed to timely file suit, and because he has failed to establish any basis for the application of the doctrine of equitable estoppel, the Court sustains Defendants' motions for summary judgment.

## III.  Motions for Injunctive Relief

As noted earlier, the Court stayed proceedings related to Plaintiff's Second Motion for Temporary Restraining Order (Doc. #79) and Plaintiff's Motion for Preliminary Injunction (Doc. #89) pending a ruling on the motions for summary judgment. These motions for injunctive relief are rendered moot in light of the Court's ruling on the motions for summary judgment.

## IV.  Conclusion

Plaintiff failed to file his hybrid §301 claim in a timely manner and there is no basis for applying the doctrine of equitable estoppel. The Court therefore SUSTAINS Defendant Navistar's Motion for Summary Judgment (Doc. #85) and the UAW Defendants' Motion for Summary Judgment (Doc. #87).

Plaintiff's Second Motion for a Temporary Restraining Order (Doc. #79) and Plaintiff's Motion for a Preliminary Injunction (Doc. #89) are OVERRULED as moot.

14

Judgment will be entered in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date:  January 30, 2012

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE